# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT PETERS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 16-cv-1271-JPG-CJP ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant.[1] | ) ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Scott Peters seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Peters is pro se in this Court but was represented by counsel at the administrative stage.

Plaintiff applied for benefits in November 2013, alleging disability beginning on August 2, 2005. By the time an evidentiary hearing was held, Peters was incarcerated on criminal charges brought by the State of Illinois. His attorney waived Peters' personal appearance at the hearing. His attorney also amended his alleged date of onset to May 1, 2013, and sought only a closed period of disability from that date to October 1, 2014. After holding an evidentiary hearing in plaintiff's absence, ALJ Lovert F. Bassett denied the application on February 25, 2016. (Tr. 86-98). The Appeals Council denied review, and the decision of the ALJ became the final agency

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

decision. (Tr. 9). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff's pro se brief (Doc. 35) raises the following points:

1. His attorney rendered ineffective assistance of counsel in several respects.

2. His due process and equal protection rights were violated because he did not personally waive his right to be present for the hearing or amend his onset date.

3. Plaintiff was denied his right to cross-examine witnesses.

4. The ALJ's decision was wrong because the VA has found him to be disabled.

5. The ALJ was biased against him, as illustrated by the ALJ's permitting the agency's expert reports to be presented with no opposition. Further, the ALJ impugned plaintiff's credibility and based his decision on VA medical records that contained numerous errors.

6. Plaintiff was not examined by a medical expert or an independent consultant.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is

done for pay or profit.   20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of judicial review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).   Thus,

this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Bassett followed the five-step analytical framework described above. He determined that plaintiff was insured for DIB only through June 30, 2014, and had not worked at the level of substantial gainful activity from the amended alleged onset date through June 30, 2014. He found that plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, and obesity, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform the full range of work at the light exertional level. Based on the testimony of a vocational expert, the ALJ found that plaintiff could do his past work as a project director. In the alternative, a finding of not disabled was directed by the Medical-Vocational Guidelines ("Grids") Rule 202.14 because he

was able to do a full range of light work, was in the category of "closely approaching advanced age," and had a high school education.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. Because of the nature of plaintiff's arguments, a detailed review of the medical records is not necessary.

1. **Agency Forms.**

Plaintiff was born in 1962 and was almost 51 years old on the alleged onset date of May 1, 2013. A prior claim had been denied in January 2008. (Tr. 257-258). He had two years of college education. (Tr. 262). He had worked as a consultant in project management from 2002 to 2006, and as a sheet metal worker from 1992 to September 2001. (Tr. 268). From April 2007 to September 2009, plaintiff tried to work as a self-employed consultant. (Tr. 282-283).

2. **Evidentiary Hearings.**

Plaintiff was represented by an attorney at both evidentiary hearings. (Tr. 24, 30).

At the first hearing, held in June 2015, plaintiff's wife stated that plaintiff had been convicted of attempted murder of two officers, along with other charges including weapons charges. He was in jail awaiting sentencing. (Tr. 35). Plaintiff's attorney amended his alleged date of onset to May 1, 2013, and waived his right to appear at the hearing. (Tr. 38-41, 43-44). The attorney said that he was claiming a closed period between May 1, 2013, and October 16, 2014. (Tr. 45). The attorney later sent the ALJ a letter confirming that he was seeking a closed period of disability from May 1, 2013, to October 1, 2014. (Tr. 364).

The ALJ had a psychological expert available to testify, but plaintiff's attorney declined because plaintiff was not claiming any "mental disability." (Tr. 42).

Plaintiff's wife testified that he worked as a project director for C&P Maintenance from 2007 through 2009. (Tr. 48).

A supplemental hearing was held in December 2015. Plaintiff was incarcerated at Stateville Correctional Center. His attorney again waived his appearance at the hearing. (Tr. 24).

### 3. Medical Treatment.

Plaintiff received medical treatment at a VA facility. The records reflect that his hip and pelvis were fractured in 1982 when a Jeep landed on him. (Tr. 438).

In October 2012, an MRI of the lumbar spine showed some hypertrophic changes of facet joints at L3 through L4, mild to moderate hypertrophic changes, minimal posterior disc bulging and mild to moderate narrowing of the sagittal dimension vertebral canal at L4-L5, and moderate to severe hypertrophic changes of facet joints, minimal to mild disc protrusion and some encroachment of neural foramens at L5-S1. (Tr. 450-451).

A CT scan of the cervical spine in April 2013 showed degenerative changes at C3-4. (Tr. 450-451).

During the period in issue, plaintiff was treated for complaints of neck and back pain. In May 2013 he presented to the emergency room with mid-thoracic back pain. His pain had recurred after he ran out of Hydrocodone and Valium. He was diagnosed with acute thoracic/trapezius muscle spasm and pain. He was prescribed Hydrocodone, Valium and a Medrol dose pack. (Tr. 416-418). He was seen again in June when he ran out of medication.

On exam, he had muscle spasms in the neck and trapezius muscle. Sensation was intact and his gait was normal. (Tr. 404-407).

In July 2013, a doctor in the physical medicine rehab department assessed plaintiff. He complained of increasing right hip and low back pain. She reviewed his records back to 2007 and noted he had "multiple exams with rather minimal findings." EMG did not show radiculopathy. She reviewed his lumbar MRI and cervical CT scans described above. On exam, he had functional movement of all limbs, good sitting posture, fair standing posture and no frank lower extremity muscle atrophy. She recommended physical therapy and a possible trial of a TENS unit. (Tr. 396-400). Later that month, a functional screening indicated that plaintiff did not have mobility, balance or gait problems, and he did not have difficulties with activities of daily living. (Tr. 394).

The health summary at the beginning of the VA records indicates he was last seen in September 2013, when a colonoscopy was done. (Tr. 365, 367).

## **Analysis**

Plaintiff was an inmate in the Illinois Department of Corrections at the time he filed suit. According to the IDOC website, https://www.illinois.gov/idoc/, visited on August 3, 2017, his projected parole date is in March 2130. He cannot be paid social security disability benefits while he is in prison for a felony conviction. However, if he were to be found disabled and his wife met the criteria for benefits, she would not be precluded from receiving payment while he is in prison. 42 U.S.C. § 402(a)(1)(A)(i); 20 C.F.R. § 404.468.

Plaintiff applied for DIB. He was insured for DIB only through June 30, 2014. In a DIB case, a claimant must establish that he was disabled as of his date last insured. *Stevenson v.*

*Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

A few points mentioned by plaintiff can be swiftly disposed of. At page 10 of his brief, plaintiff cites the definition of disability set forth in the Americans with Disabilities Act. That definition does not apply here. The relevant definition of disability is set forth above. The fact that the VA found that he has a service-related disability does not mean that he is entitled to social security disability benefits because the two agencies evaluate disability claims differently. *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017). Whether or not an employer would actually hire him is not the standard for disability. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

Plaintiff advances a number of constitutional claims, none of which are meritorious. Social security disability claims are civil, not criminal in nature. Therefore, he had no constitutional right to personally appear at the hearing or to confront the witnesses against him.

Because the proceedings were civil, plaintiff had no constitutional right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 656-657 (7th Cir. 2007). The Sixth Amendment guarantee of the effective assistance of counsel does not apply in a civil case. *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017). Any argument that plaintiff's attorney committed malpractice in representing him before the agency cannot be considered here because professional negligence, if it occurred, would not be grounds to reverse the Commissioner's decision. *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001).

Plaintiff suggests that the ALJ erred in accepting his counsel's waiver of his appearance at the hearings and amendment of the alleged date of onset of disability. He is incorrect. In keeping with the general rule that an attorney acts as the agent of his client, the regulations provide that a claimant's representative may, on the claimant's behalf, "make statements about facts and law" and "make any request or give any notice about the proceedings before us." 20 C.F.R. § 404.1710(a). Further, the Appointment of Representative form signed by plaintiff and his attorney provides that the representative "may, entirely in my place, make any request or give any notice . . . in connection with my pending claim(s) or asserted right(s)." (Tr. 109).

Plaintiff suggests that the ALJ was biased against him and faults the ALJ for not doing more to ensure that his rights were protected and that evidence was presented to support his claim of disability. Plaintiff misunderstands the role of the ALJ, which is not to function as an advocate for the claimant. On the contrary, where the claimant is represented by counsel, "the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).

Plaintiff argues that the VA records contained inaccurate statements and that the ALJ's decision cannot stand because it was based on the inaccurate records. Attached to his brief are some pages of the VA medical records with his hand-written notations and criticisms. However, this Court can consider only the evidence that was before the ALJ. See 42 U.S.C. § 405(g); *Stepp v. Colvin*, 795 F.3d 711, 721 n.2 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004). No evidence was presented to the ALJ to suggest that the VA medical records were inaccurate. The ALJ cannot be faulted for taking the records at face value.

Plaintiff also faults the ALJ for not obtaining a consultative examination of him. The record does not reflect that plaintiff's attorney requested an examination. Courts generally defer to the ALJ's decision about whether to order a consultative examination. Noting that the clamant has the "primary responsibility for producing medical evidence demonstrating the severity of impairments," the Seventh Circuit has recognized that, "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Here, an examination would have been of doubtful value, as the issue is whether plaintiff was disabled as of June 30, 2014, and the request for hearing by an ALJ was not filed until November 2014. (Tr. 116).

That leaves plaintiff's argument that the ALJ failed to properly consider his complaints of pain. Plaintiff takes issue with the ALJ's comparing his complaints to the objective evidence. However, it was not error to consider the discrepancy between the objective medical records and plaintiff's subjective claims. *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010). There was no evidence that plaintiff had any mental condition which affected his pain, so his citation to *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004), is not applicable. Plaintiff argues that the ALJ was inconsistent in finding that he had severe impairments but also finding that there was nothing wrong with him. However, the ALJ did not find that there was nothing wrong with plaintiff. He accepted that plaintiff had severe impairments which caused him some pain during the period at issue. That is why he limited him to only light work.

Having carefully considered plaintiff's arguments, the Court finds that none are meritorious. Even if reasonable minds could differ as to whether plaintiff was disabled at the

relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413. ALJ Bassett's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Bassett committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Scott Peters' application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** 8/10/2017

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**U. S. DISTRICT JUDGE**